## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ULYSSES CAGE, | ) | Case No. 1:15 CV 365 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| AVIS BUDGET GROUP, et al., | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | (Docs. # 19 & 23) |

This matter is before the Court on Defendants' motion for summary judgment as to Plaintiff's claim of disability discrimination in employment. Doc. 19. For the reasons that follow, Defendants' motion is GRANTED. Defendants' also filed a motion to strike portions of Plaintiff's affidavit. The motion to strike is DENIED as moot.

### I.     FACTS

Plaintiff, Ulysses Cage, filed suit against Defendants, AB Car Rental Services, Inc. originally named as Avis Budget Group Inc. and Ryan Williams (collectively "Avis"), alleging that his employment was terminated because of his disability. Doc. 1-1. Avis argues that he was terminated for failure to respond to a letter requesting contact about his extended absence. The parties do not dispute the following facts.

Mr. Cage was first diagnosed with Crohn's disease in 2000, and he periodically experiences symptoms of the disease. Doc. 1-1 at ¶ 9-10. Mr. Cage was hired by Avis in April of 2005. At

that time, he voluntarily disclosed his diagnosis, and Mr. Cage testified that he was told by an Avis manager that frequent trips to the bathroom would not be a problem as long as he was able to clean and detail 30 cars each night. Doc. 20-1 at 15-18. After a 90-day probationary period, Mr. Cage was promoted to a premium position and given an increase in pay. Doc. 20-1 at 17-19.

At the start of his employment, Mr. Cage completed an orientation, which included instruction on the company's anti-discrimination policy, code of conduct, and attendance policy. The attendance policy stated that an employee could be fired for failing to appear at work or failing to call in for three days in a calendar year. Doc. 20-1 at 24. As part of his orientation, he also completed a Personal Data Form, on which he indicated that he was not disabled. Doc. 20-1 at 20-22.

While Mr. Cage was employed by Avis, he was a member of the Teamsters Union Local 293. Mr. Cage believed that any difficulty he had with a manger or other issue connected with employment should be brought to the union shop steward who would address it. During his employment with Avis, two supervisors approached Mr. Cage about the frequency and duration of his bathroom breaks. Mr. Cage brought the issue to the attention of the shop steward, who indicated that he would handle it, and he was not disciplined for taking bathroom breaks. Doc. 20-1 at 28-30.

Mr. Cage testified that management response to his work was generally positive throughout his employment. However, he was suspended for attendance violations (absences) in 2006. Doc. 20-1 at 33. When Mr. Cage would call off in 2005-2007, he would state generally that he was sick. Although some of the absences were Crohn's related, he did not contest the suspension or offer the supervisor an explanation for the absences. Doc. 20-1 at 38-39.

2

In 2008, Mr. Cage's condition required surgery, and he was approved for and took 90 days of personal leave.  After the surgery, apart from his need for frequent bathroom breaks and time to convalesce, he did not require or request any additional accommodation due to his condition.  Doc. 20-1 at 33.  Mr. Cage eventually returned to work in March of 2009.

After this return, Mr. Cage received additional attendance warnings.  In June of 2009, Mr. Cage received a written warning for attendance violations.  In early February 2010, he received both a verbal and a written warning about attendance, which he refused to sign.  He was ultimately suspended for three days.  Doc. 20-1at 44-45.

Around this time, Mr. Cage initiated an application for FMLA leave.  Avis has an independent processor handle its FMLA requests.  When Mr. Cage made his application through the processor and requested paperwork from his doctor, the resulting leave requests were conflicting.  One request sought a block of time while the other sought intermittent leave.  Both Mr. Cage and his doctor believed he was able to perform his basic job functions but would occasionally need to be absent.  Doc. 20-1 at 48.  While the processor worked through his two leave requests, Mr. Cage remained off work (approximately February 8 – April 17, 2010).  Doc. 20-1 at 49-51.

Mr. Cage returned to work on April 18, 2010 with a doctor's release but was sent home by Avis, stating that he was suspended due to unapproved absence.  Doc. 20-1at 51-52.  Unlike his prior suspensions, Mr. Cage did not receive any paperwork informing him of his suspension nor did he contact anyone at Avis about the situation.  Doc. 20-1at 51-52.  Mr. Cage contacted the union steward seeking to file a grievance, but the steward told him the union would not fight the

suspension because it had received paperwork indicating that Mr. Cage had missed too many days. Doc. 20-1at 51-52.

Meanwhile, the processor was still working through Mr. Cage's FMLA request. The processor denied the request for long-term disability. But it sent a subsequent letter, dated April 20, 2010 (two days after Cage was suspended), indicating that short-term disability had been approved through April 17, 2010. Doc. 20-1 at Exhibit Y. Because Mr. Cage returned to work, the processor closed the file and considered the leave request to be concluded.

After Mr. Cage received the processor's second letter approving his leave, he contacted the shop steward about lifting his suspension but was again told the union would not pursue it because he had missed too many days. Doc. 20-1 at 52. Mr. Cage did not contact Avis directly because "Management" was copied on the letter, and he believed they were already aware that his leave had been approved. Furthermore, Mr. Cage believed that under union rules he was not permitted to contact management directly concerning his suspension. Doc. 20-1 at 52. According to Mr. Cage, because he had been suspended until further notice, he could not come back on the property until he received a notice from Avis in the mail and the union steward ushered him back onto the job. Doc. 20-1 at 53. He did not return to work after April 18.

Mr. Cage received a letter dated May 12, 2010, from Defendant Ryan Williams, the Cleveland manager for Avis, requesting that he contact him immediately to advise whether Mr. Cage was released by his physician to return to work. Doc. 20-1 at Exhibit Z. Mr. Cage testified that he did not attempt to return to work or contact Mr. Williams. Doc. 20-1 at 54. Approximately two weeks later, in the absence of a response, Mr. Cage received a second letter terminating his employment for violating: 1) the union's collective bargaining agreement requirement, which

4

allows for dismissal after an absence of two or more days without notifying the company; and 2) Avis rules allowing dismissal after three consecutive days without notifying management. Doc. 20-1 at 54 and Exhibit AA.

## II.  LEGAL STANDARD

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id.* At 252. Further, on summary judgment, the inferences to be drawn from underlying facts must be viewed "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The pivotal question in deciding a motion for summary judgment is whether a reasonable fact finder *could* make a finding in favor of either party. *See Anderson* 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

The initial burden of showing the absence of any "genuine issue" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury" or other fact-finder at trial. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A party opposing summary judgment must show that there are facts genuinely in dispute, and must do so by citing to the record. Fed.R.Civ.P. 56(c)(1)(a).

**III.   LAW AND ANALYSIS**

Mr. Cage alleges disability discrimination in violation of Ohio Revised Code § 4112.02, which provides:

> It shall be an unlawful discriminatory practice:
>
> (A) For any employer, because of race, color, religion, sex military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

To establish a *prima facie* claim of disability discrimination under Ohio law, Mr. Cage must demonstrate: (1) "[T]hat [he] was [disabled], (2) that an adverse employment action was taken by an employer, at least in part, because the individual was [disabled], and (3) that the person, though [disabled], can safely and substantially perform the essential functions of the job in question." *Hood v. Diamond Products, Inc.,* 74 Ohio St.3d 298, 302 (1996) (*citing Hazlett v. Martin Chevrolet, Inc.*, 25 Ohio St.3d 279, 281 (1986)). A plaintiff bears the initial burden of presenting the *prima facie* case. Only after the plaintiff demonstrates the elements of the offense does the burden shift to the "employer to set forth some legitimate, nondiscriminatory reason for the action taken." *Id.* at 302. "Finally, if the employer establishes a nondiscriminatory reason for the action taken, then the employee or prospective employee must demonstrate that the employer's stated reason was a pretext for impermissible discrimination." *Id.* (*citing Plumbers & Steamfitters Joint Apprenticeship Commt.,* 66 Ohio St.2d 192, 198 (1981)).

Here, Mr. Cage argues that he was terminated because he is disabled or was regarded-as disabled. The Court will assume, as the parties have, that Crohn's disease is a disability under Ohio law, and in the interest of efficiency, the Court will not analyze further whether Cage has made a prima facie case of discrimination. Instead, the Court moves directly to the issue of

6

whether Avis has established evidence of a legitimate, non-discriminatory reason for the alleged adverse employment action. The Court finds that there is no genuine issue of material fact that Avis had a legitimate, non-discriminatory reason for terminating Mr. Cage's employment.

Mr. Cage alleges that Avis discriminated against him when it terminated his employment via letter dated May 28, 2010. Doc. 1-1 at ¶20; Doc. 20-1 at 158. However, the record indicates that Mr. Cage was terminated after failing to respond to Avis' letter of May 12, 2010. The May 12 letter stated: "…your absences since April 18, 2010 may count as occurrences against the local attendance policy. Please contact me immediately to advise whether your physician has released you to return to work at this time." Doc. 20-1 at 157. It is undisputed that Mr. Cage did not call Mr. Williams as directed by the letter from Avis. Even if Mr. Cage called his union steward or allegedly spoke with a secretary in the Avis or airport-management office, the May 12 letter directed him to contact Mr. Williams and the letter included Mr. Williams' phone number. The May 12 letter also included the phone number and e-mail addresses for two individuals in Human Resources ("HR") that Mr. Cage could contact if he had questions. It is undisputed that he did not contact any of these individuals.

> Q: This document [May 12 letter] says, "Please contact me immediately to advise whether your physician has released you to return to work at this time," correct?
>
> A: Correct.
>
>
> Q: And it's signed by Ryan Williams, correct?
>
> A: Correct.
>
> Q: Did you contact Ryan Williams?
>
> A: No.

7

  * * *

  Q: Did you receive this letter on or around May 28, 2010?

  A: Yes.

  Q: And this letter states that you had not worked since April 18, 2010. That was true, correct?

  A: Yes.

  Q: And the letter further states that on May 13, 2010, a letter was sent to you asking you to contact AB Car Rental. That was true as well, correct?

  A: Correct.

  Q: The letter goes on to state that AB Car Rental did not receive a response from you. That was true, correct?

  A: Correct.

Doc. 20-1 at 54.[1]

  Mr. Cage did not respond to Avis' letter requesting contact about his absence from work. When the company did not hear from him, it terminated his employment. This constituted a non-discriminatory, legitimate reason for termination. *See Hammon v. DHL Airways, Inc.*, 765 F.3d 441, 448 (6th Cir.1999) ("An employee can 'constructively resign' …by failing to comply with his employer's written request requiring him to take certain action…").

  The burden now shifts to Mr. Cage to establish pretext; however, he does not address this element in his brief in opposition to summary judgment. Furthermore, there is nothing in the

---

[1] Avis filed a motion to strike Mr. Cage's affidavit, executed and filed after his deposition testimony was taken. Avis argues that the affidavit somehow impermissibly contradicts Cage's deposition testimony. However, in his affidavit, Mr. Cage asserts that he tried to contact Debra Bernier, "the Airport Manager." This allegation does not contradict Mr. Cage's testimony that he did not contact Mr. Williams or the HR representatives as directed on the May 12 letter. Thus, the affidavit is irrelevant to the Court's analysis.

record to demonstrate that an issue of material fact exists to support this element of his disability discrimination claim.

Because the Court finds that AB Car Rental, as a corporate entity is entitled to summary judgment on Mr. Cage's discrimination claim, Mr. Williams is likewise entitled to summary judgment. Mr. Cage points to no conduct beyond the actions analyzed above that would trigger a question of fact as to Williams' individual liability.

Finally, because the Court finds summary judgment appropriate on Mr. Cage's claim for disability discrimination, the Court declines to review Avis' claim for pre-emption under Section 301 of the Labor Management Relations Act.

### IV. CONCLUSION

Reviewing the facts in a light most favorable to the Plaintiff Ulysses Cage, no genuine dispute of material fact exists on any claim against Defendants. Therefore, the Defendants are entitled to judgment as a matter of law, and their motion for summary judgment is GRANTED. The Defendants' motion to strike is DENIED as moot.

IT IS SO ORDERED.

Dated: 03/21/2017  */s/John R. Adams*
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE